UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**NEIKASHAY D KIRLEW**

**VERSUS**

**GOLDEN NUGGET LAKE CHARLES LLC**

**CASE NO. 2:22-CV-00309**

**JUDGE JAMES D. CAIN, JR.**

**MAGISTRATE JUDGE KAY**

MEMORANDUM RULING

Before the court is a Motion to Dismiss and Compel Arbitration, alternatively, Motion to Stay [doc. 5] filed by defendant Golden Nugget Lake Charles, LLC ("Golden Nugget"). Plaintiff Neikashay Kirlew opposes the motions. Doc. 7.

I.
BACKGROUND

This suit arises from employment discrimination allegations made by Kirlew, a black woman whose national origin is Jamaican, against Golden Nugget, where she was employed as a beverage server from October 2016 until November 2021. Doc. 1; doc. 5, att. 2, p. 1. Kirlew filed suit in this court on January 31, 2022, raising claims under Title VII of the Civil Rights Act. Doc. 1. Golden Nugget then moved to compel arbitration and dismiss the suit or, alternatively, stay proceedings pending arbitration. Doc. 5. To this end it points out that Kirlew electronically signed a "Mutual Agreement to Arbitrate" when she began her employment, under which she is obligated to arbitrate certain claims arising from the course and scope of her employment (including those "arising under the federal and

state employment laws," which "includes, but is not limited to . . . Title VII of the Civil Rights Act"). *See* doc. 5, att. 2, p. 5. The agreement also provides that acts of acceptance include either beginning or continuing work after receiving notice of the policy. *Id.*

Golden Nugget updated this policy in 2018, providing multiple notices of the new policy to employees between that time and when Kirlew left the company. *Id.* at pp. 1–2, ¶¶ 7–14. The 2018 agreement covers "claims for . . . discrimination or harassment because of race, gender, color, pregnancy, religion, national origin, ancestry, age, disability, medical condition, marital status, sexual orientation, gender identity, or any other characteristic protected by applicable law[.]" *Id.* at p. 8. It also provides that continued employment constitutes acceptance, even without signature. *Id.* at 9–10. Accordingly, Golden Nugget maintains that Kirlew is bound to arbitrate all claims raised in this suit. Doc. 5. Kirlew opposes the motion, arguing that she never received or signed either the 2016 or 2018 agreement. Doc. 7.

## II.
## LAW & APPLICATION

On a motion to compel arbitration, the court's first task is to determine whether the parties agreed to arbitrate the dispute. *Garrett v. Circuit City Stores, Inc.*, 449 F.2d 672, 674 (5th Cir. 2006). To this end the court asks (1) is there a valid arbitration agreement and (2) does the dispute fall within the scope of that agreement? *Sherer v. Green Tree Svcg., LLC*, 548 F.3d 379, 381 (5th Cir. 2008). Step one focuses on contract formation while step two focuses on contract interpretation. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199,

201 (5th Cir. 2016). The first step is governed by state law. *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013).

Under Louisiana law, there is no requirement that a party provide written consent to an arbitration agreement. *Marino v. Dillard's, Inc.*, 413 F.3d 530, 532 (5th Cir. 2005). Instead, a party may bind himself to an arbitration agreement or other contract with "action or inaction . . . clearly indicative of consent," including his continued employment. *Id.* (citing La. Civ. Code art. 1927). This point was emphasized in *Omni Hotels Management Corporation v. Bayer*, where the court found that employees were bound by an arbitration agreement under Louisiana law through their continued employment even though they refused to sign the agreement and, in some cases, the receipt intended to provide proof of notice. 2006 WL 8456480 (E.D. La. Jan. 11, 2006); *aff'd*, 235 F. App'x 208, 211 (5th Cir. 2007); *accord Lee v. Coca-Cola Enterps., Inc.*, 2008 WL 920742 (W.D. La. Mar. 4, 2008).

Golden Nugget provides the electronic signature linked with Kirlew's account in its employee software and explains how new employees used this software and signature to execute numerous documents, including the 2016 arbitration agreement, as part of their onboarding process. Doc. 5, att. 2, pp. 1, 4. In a supplemental declaration, Golden Nugget's human resources vice president states that this same signature was used by Kirlew to execute her electronic pay authorization form and that she could not have been paid through direct deposit otherwise.

Kirlew maintains that the electronic signature provided by Golden Nugget is not hers and provides numerous examples of her signature as attempted proof. Doc. 7, att. 2. She provides an affidavit to this effect, in which she also states that she was never given a

copy of the 2018 agreement and that she never saw it in Kronos or anywhere else. Doc. 7, att. 1. She further states that she only heard about this agreement in a brief reference during a preshift meeting from her supervisor in 2018, and then later after she filed her EEOC complaint. *Id.* She also provides unsworn statements from four former Golden Nugget employees, who began work between 2015 and 2018 and state that they (1) were never given an arbitration agreement to review or sign, (2) never saw one posted, and (3) never had the existence of any such agreement explained to them by management. Doc. 7, att. 3. Finally, Kirlew provides a screenshot of a Change.org petition signed by fifteen other individuals, asserting that they were not given a "thorough detailed explanation" of the arbitration agreement and/or were not given "an electronic holding form permitting the company to use your electronic signature for the entire duration of your employment." Doc. 7, att. 4.

  At the outset, the court finds that the statements from Kirlew's fellow employees and the petition signatures are insufficient to create issues of material fact. Namely, the petition does not provide sufficient context for the identity of the signers, does not contain any guarantees of their truthfulness in this matter, and is unclear as to whether they are asserting that they never received the policy (or notice thereof), never had it sufficiently explained to them, or both. As for the statements, these are similarly lacking in context and do not exclude the possibility—as asserted by Golden Nugget—that notice of the 2018 policy was provided through the timekeeping software itself.

  The court questions the veracity of the statements by Kirlew as to her electronic signature. A litigant's affidavit may serve to defeat a motion for summary judgment when

it is based on personal knowledge and contains factual assertions sufficient to create issues of material fact, even though the affidavit is also self-serving. *C.R. Pittman Constr. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2009). Under the "sham affidavit doctrine," the court will not "allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *Seigler v. Wal-Mart Stores Tex., LLC*, 30 F.4th 472, 478 (5th Cir. 2022). This doctrine is only applied, however, to inherent and unexplained inconsistencies with prior sworn testimony. *Id.* There is no prior sworn testimony implicated here; only the contradiction between Kirlew's assertion that the electronic signature is not hers and the similarity between it and the signatures she offers as proof. Additionally, her affidavit is based on personal knowledge concerning the onboarding process and her own signature. Accordingly, the court cannot disregard these statements under the sham affidavit doctrine.

As for Kirlew's notice of the 2018 agreement, however, the court finds that her affidavit statements are insufficient to create an issue of fact. Golden Nugget's human resources vice president has stated that it provided reminders of the policy for two-week periods in November 2019, November 2020, and June 2021 by posting notices in the timekeeping software, Kronos. Doc. 5, att. 2, pp. 17–18, 21–22. The notices provided a summary of the policy in English and Spanish along with the statement, in bold, that the employee's continued employment constitutes acceptance of the policy. *Id.* The company has also provided a record of Kirlew's clock-ins and clock-outs through that software in

November 2019 and June 2021.[1] *Id.* at 19–20, 25. While Kirlew asserts that she "never saw the alleged arbitration agreement in Kronos" and that the software "did not work 75% of the time," this statement does not refute Golden Nugget's evidence that notice of the policy and its essential terms was provided in Kronos during two different periods in which Kirlew was successfully clocking in and out on several different occasions. Doc. 7, att. 1. Furthermore, Kirlew has admitted that she was given notice of the policy's existence in a pre-shift meeting in 2018. *Id.* She therefore cannot create a triable issue of fact over whether she had sufficient notice of the policy and opportunity to learn of its complete terms, and thus accepted it through her continued employment.

The second question, concerning the arbitrability of claims, is decided under the federal policy favoring arbitration. *Sherer*, 548 F.3d at 381. The plain language of the 2018 agreement further shows that all of plaintiff's claims fall within the scope of the policy, a point she does not appear to dispute. Accordingly, the claims must be ordered to arbitration.

The final issue for the court, then, is whether this matter should be dismissed or stayed pending arbitration. The Fifth Circuit has long recognized that dismissal is the proper course when all of plaintiff's claims are subject to arbitration. *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *Griggs v. S.G.E. Mgmt. LLC*, 905 F.3d 835, 839 (5th Cir. 2018). That is the case here; retaining jurisdiction would thus serve no purpose and the motion to dismiss will be granted.

---

[1] Kirlew states that she was furloughed in November 2020. Doc. 7, att. 1, p. 2.

## III.
### CONCLUSION

For the reasons stated above, the Motion to Stay [doc. 5] will be **DENIED** and the Motion to Dismiss and Compel Arbitration [*id.*] will be **GRANTED**. Accordingly, the parties will be ordered to engage in arbitration as described by the 2018 agreement and plaintiff's claims will be **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** in Chambers this 28th day of July, 2022.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**